1

2                    UNITED STATES DISTRICT COURT

3                 FOR THE EASTERN DISTRICT OF CALIFORNIA

4

5    SAN JOAQUIN RIVER GROUP              1:11-cv-00725 OWW GSA
     AUTHORITY,
6                                         MEMORANDUM DECISION RE CENTRAL
                    Plaintiff,            DELTA WATER AGENCY, ET AL.'S
7                                         MOTION TO INTERVENE (Doc. 27)
          v.
8
     NATIONAL MARINE FISHERIES
9    SERVICE,

10                  Defendants.

11

12                    I. INTRODUCTION/BACKGROUND

13       This suit arises from the United States Pacific Fisheries

14   Management Council's ("PFMC") April 13, 2011 adoption of

15   commercial troll and recreational fishing management measures for

16   the waters south of Cape Falcon, permitting commercial and

17   recreational fishing for Sacramento River fall-run Chinook Salmon

18   ("SRFC") for the 2011 fishing season ("2011 management

19   measures"), and the National Marine Fisheries Service's ("NMFS")

20   May 4, 2011 approval of the PFMCs recommended 2011 fishing

21   regulations.  Doc. 1.

22       Central Delta Water Agency, South Delta Water Agency, Honker

23   Cut Marine, Inc., Rudy Mussi, and Roubert Souza (collectively

24   "Applicants") move for leave to intervene in this case as of

25   right pursuant to Federal Rule of Civil Procedure 24(a), or in

26   the alternative to permissively intervene under Rule 24(b).  Doc.

27

28                                  1

19, filed June 10, 2010.  Federal Defendants take no position on the motion, provided the intervention will not affect the page limits available to Federal Defendants for any briefing in this matter.  Doc. 29.  Plaintiff opposes.  Doc. 30.  Applicants replied.  Doc. 43.

## II. BACKGROUND

A.   Claims in this Case.

Plaintiff, a coalition of irrigation districts holding water rights in the San Joaquin River or one of its tributaries, assert that Federal Defendants' adoption of the 2011 management measures violates the Administrative Procedure Act ("APA"), Magnuson-Stevens Fishery Conservation and Management Act ("Magnuson Act"), and National Environmental Policy Act ("NEPA"), by among other things approving "high levels" of Sacramento River Fall Run Chinook salmon harvest, even though "overfishing" concerns allegedly continue relative to the abundance of the species.  *Id*.

B.   The Applicants.

1.   Central Delta Water Agency.

The Central Delta Water Agency ("Central Delta") is a political subdivision of the State of California, created by the California Legislature in 1973.  Mussi Decl., Doc. 27-5, ¶ 18. Central Delta's territory includes approximately 125,000 acres of land and associated waterways located entirely within the boundaries of the Delta, as defined by Section 12220 of the

California Water Code, in the County of San Joaquin.  Although Central Delta's lands are devoted primarily to agriculture, its lands have other uses, including for commercial, navigation, transportation, residential, recreational, and habitat purposes. *Id*. ¶ 21.

A Central Delta Director and Co-Plaintiff, Rudy Mussi, explains that that Central Delta has a long-standing interest in Delta water quality because "[g]ood quality water is necessary for all of the uses of the waters within the Delta including farming, recreation, and wildlife use."  Mussi Decl., 27-5, ¶ 28.

2.   <u>South Delta Water Agency.</u>

Like Central Delta, South Delta is a political subdivision of the State of California, created by the Legislature in 1973. Robinson Decl., Doc. 27-3, ¶ 19.  South Delta includes approximately 148,000 acres of land and associated waterways located entirely within the boundaries of the Delta, in the County of San Joaquin.  *Id*.  South Delta's lands are also principally devoted to agriculture, but other uses include commercial, navigation, transportation, residential, recreational, and habitat purposes.  South Delta is also empowered to undertake "any lawful act necessary in order that a sufficient in-channel water supply of suitable quality may be available for any present or future beneficial use or uses of the lands within the agency."  Cal. Water Code App. §§ 116-4.1, 116-

3

4.2(b).

     3.    Honker Cut Marine, Inc.

     Honker Cut Marine, Inc. ("Honker Cut"), is a California

Corporation, owned and operated since 1986 as a marine business

on King Island in San Joaquin County, on Honker Cut (a Delta

waterway).  Karnofel Decl., Doc. 27-4, ¶¶ 3-4.  Honker Cut owns

the real property on which it operates, which is situated on

Honker Cut.  *Id*. ¶ 3.  The business sells, services, stores,

maintains, and launches boats used in the Delta for, among other

things, recreational fishing.  *Id*. ¶¶ 4, 7.

     4.    Robert Souza, Sr.

     Robert Souza, Sr. is an avid angler residing in Stockton,

California.  Souza Decl., Doc. 27-6, ¶¶ 1, 4-5.  He regularly

visits the Delta to fish for striped bass.  *Id*. ¶ 6.  Mr. Souza

is keenly interested in the conservation of striped bass in the

Delta, for educational, moral, spiritual, aesthetic, and

recreational reasons, and asserts the belief that "it is

unethical to kill salmon, steelhead, and striped bass in the

Delta."  *Id*. ¶¶ 6.

     Mr. Souza characterizes his interest in this litigation as

follows:

          The plaintiff's lawsuit claims that its "member
          agencies are injured by the failure" to comply with
          Magnuson-Stevens "because their water rights, water
          supply and water supply facilities and all of its
          electrical generation, recreation, and flood control
          facilities depend on or are located on the San Joaquin

                                    4

River and its tributaries, which is occupied by"
Sacramento River fall-run Chinook salmon, and "[a]s
holders of the major non-federal and non-State water
rights in the San Joaquin River basin, SJRGA member
agencies are responsible for abundance of" Sacramento
River fall-run Chinook salmon. Complaint for
Declaratory Relief and Injunctive Relief, para. 16-17.
SJRGA's member agencies claim water rights upstream of
the Delta, and their use and exercise of their alleged
rights impacts Delta water quality. If SJRGA's member
agencies in fact claim that they have a responsibility
for Sacramento River fall-run Chinook salmon and that
their water use operations are influenced by the
abundance of such salmon, than [sic] Delta water
quality is also influenced by the abundance of such
salmon, and I personally am interested in SRFC
abundance.

Id. ¶ 17.


    5.   Rudy Mussi.

    Rudy Mussi is a director of Central Delta Water Agency and a
farmer within Central Delta.  Mussi Decl. ¶1.  He has lived his
entire life in the Delta and depends on the San Joaquin River for
water used on his farm.  *Id*. ¶6.  He and his family also use the
Delta for recreational purposes, including fishing.  *Id*. at ¶7.
Mr. Mussi has a long-standing and deeply-held personal interest
in the conservation of the Delta and its species.  *Id*. at ¶¶ 8-
10.

    As a director of Central Delta for the past 19 years, he has
spent "countless hours of his own time working on a multitude of
issues relating to the health of the Delta ecosystem," and
professes to "experience great happiness with the understanding I
am working toward a healthy Delta that will support all fish and
wildlife species, including salmon, steelhead, striped bass,
black bass, and delta smelt, as well as birds and other

wildlife." *Id*. ¶¶ 11-12.  Mr. Mussi states that "[t]he precipitous declines in all fish populations in past decades indicate the overall poor health of the Delta due to the effects that the state and federal pumps have on the ecosystem." *Id*. at ¶ 16.

### III. INTERVENTION AS OF RIGHT.

Applicants move to intervene as of right or, in the alternative, to permissively intervene.

**A.    Intervention as of Right.**

**1.    Legal Standard.**

Intervention is governed by Federal Rule of Civil Procedure 24.  To intervene as a matter of right under Rule 24(a)(2), an applicant must claim an interest, the protection of which may, as a practical matter, be impaired or impeded if the lawsuit proceeds without the applicant.  *Forest Conservation Council v. U.S. Forest Serv*., 66 F.3d 1489, 1493 (9th Cir. 1993).  The Ninth Circuit applies Rule 24(a) liberally, in favor of intervention, and requires a district court to "take all well-pleaded, non-conclusory allegations in the motion as true absent sham, frivolity or other objections." *S.W. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001).  A four-part test is used to evaluate a motion for intervention of right:

> (1) the motion must be timely;
>
> (2)  the applicant must claim a "significantly protectable" interest relating to the property or

transaction which is the subject of the action;

(3)  the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and

(4)  the applicant's interest must be inadequately represented by the parties to the action.

*Forest Conservation Council*, 66 F.3d at 1493.

2.  <u>Timeliness.</u>

In assessing timeliness, courts in the Ninth Circuit must consider: (1) the current stage of the proceedings; (2) whether the existing parties would be prejudiced; and (3) the reason for any delay in moving to intervene.  *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997). Applicants moved to intervene on June 10, 2010, Doc. 27, after providing notice of their intent to do so no later than June 6, 2010, *see* Doc. 24, which is approximately 30 days after the filing of the Complaint.  Existing parties are not prejudiced when "the motion was filed before the district court made any substantive rulings."  *N.W. Forest Resource Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996).  Here, no substantive rulings have been made in this case, no scheduling conference has been held, and no discovery has commenced.  The only judicial action taken in the case was the setting of a briefing and hearing schedule for the parties' cross dispositive motions.

Plaintiff nonetheless contends that the intervention is untimely because of the expedited briefing schedule on cross-

motions for summary judgment, which is not atypical in Magnuson

Act cases.  Plaintiff cites *Southern Offshore Fishing Association*

*v. Daley*, 995 F. Supp. 1411, 1424-25 (M.D. Fla. 1998)[1], which

denied intervention by a coalition of environmental

organizations.  The complaint in that case was filed May 2, 1997;

the schedule required completion of briefing on cross-motions for

summary judgment by early September 1997; and the administrative

record was filed June 16, 1997.  The intervention petition, filed

July 16, 1997, more than two months after the complaint was filed

and less than two months before briefing was to be completed, was

untimely in light of the case schedule.  *Id*.  Plaintiff fails to

mention, however, that the district court nonetheless permitted

the proposed intervenors to file *amici curiae* briefs on any issue

presented by the parties.  *Id*.

     The situation here is distinguishable.  The petition for

intervention was filed slightly more than one month after the

filing of the initial complaint, and more than one month before

briefing on cross motions was set to commence on July 22, 2011.

That briefing will span a period of almost two months, with the

final reply brief due September 16, 2011.  The motion to

intervene is timely.

     3.   Significant Protectable Interests.

     To demonstrate a "significantly protectable interest," "a

---
[1] Plaintiff's brief cites this as a "9th Cir. 1998" when it is actually a M.D.
Fla. 1998 case.

prospective intervenor must establish that (1) the interest

asserted is protectable under some law, and (2) there is a

relationship between the legally protected interest and the

claims at issue." *Id*.  Here, among other remedies, Plaintiff

seeks to enjoin SRFC commercial harvest, because, "[i]f

significant ocean harvest continues, it will blunt SRFC

preservation and restoration efforts, including those undertaken

by [Plaintiff]."  Doc. 1 ¶¶ 188-91.

                    a.   Central Delta and South Delta.

      Plaintiff objects that Applicants Central Delta and South

Delta lack significant protectable interests because their

interests are "in the Delta," not the ocean.  Doc. 30 at 3-4.

Applicants' assertion of a protectable interest is convoluted.

Rudi Mussi explains Central Delta's claim of interest in this

case:

            The plaintiff's lawsuit claims that its "member
            agencies are injured by the failure" to comply with
            Magnuson-Stevens "because their water rights, water
            supply and water supply facilities and all of its
            electrical generation, recreation, and flood control
            facilities depend on or are located on the San Joaquin
            River and its tributaries, which is occupied by"
            Sacramento River fall-run Chinook salmon and that "[a]s
            holders of the major non-federal and non-State water
            rights in the San Joaquin River basin, SJRGA member
            agencies are responsible for abundance of" Sacramento
            River fall-run Chinook salmon. Complaint for
            Declaratory Relief and Injunctive Relief, para. 16-17.
            SJRGA's member agencies claim water rights upstream of
            the Delta, and their use and exercise of their alleged
            rights impact Delta inflow and water quality. To the
            extent SJRGA's member agencies in fact claim that they
            have a responsibility for Sacramento River fall-run

1

2

3

Chinook salmon and that their water use operations are influenced by the abundance of such salmon, the Delta inflow and water quality is also influenced by the abundance of such salmon.

4

5

6

7

8

9

10

*Id*. at ¶ 29. Central Delta appears to suggest that any changes to the management of SRFC in the ocean environment that could result from this lawsuit will not only affect the abundance of salmon but may also "influence" freshwater management measures to benefit salmon, which in turn will affect water quality in the Delta.

11

12

Plaintiff argues that these asserted interests are not related to this litigation:

13

14

15

16

17

18

19

20

21

22

The water quality and water supply interests raised by the South Delta [] and Central Delta [] do not depend on whether the 2011 management measures are sustained. (Doc. 27-1.) While the Applicants state that "the fish themselves are dependent on the same water supply and water of sufficient quality to sustain them in the Delta," they do not explain how the water supply or water quality for lands within their respective jurisdictions would be harmed if the 2011 management measures were not sustained. Regardless of whether the fish depend on the same water supply and water quality, <u>SDWA and CDWA would only have an interest in the disposition of the 2011 management measures if their water supply and water quality depended on the abundance of Fall Chinook. Since this is not stated in the Motion, they do not state an interest relating to the present litigation</u>.

23

Doc. 30 at 4 (emphasis added).

24

25

26

27

28

Applicants respond by pointing out that <u>Plaintiff</u> has alleged a connection between the 2011 management measures and freshwater operations. The Complaint alleges that "Section 3406(b)(1) of the Central Valley Project Improvement Act

('CVPIA') (Public Law 102-575) directs the Secretary of the
Interior to develop and implement a program that makes all
reasonable efforts to at least double natural production of
anadromous fish in California's Central Valley streams on a long-
term, sustainable basis."  Doc. 1 ¶ 173.  SRFC are such a
species.  In addition, water quality standards imposed by the
California State Water Resources Control Board ("SWRCB") include
a "'narrative salmon doubling objective,' which requires that
water quality conditions shall be maintained, together with other
measures in the watershed, sufficient to maintain a doubling of
natural production of Chinook salmon from the average production
of 1967-1991, consistent with the provisions of State and federal
law."  *Id*. ¶ 174.  The SWRCB has also imposed Sacramento and San
Joaquin River flow objectives to "provide attraction and
transport flows and suitable habitat for various life stages of
aquatic organisms, including Delta smelt and Chinook salmon.  *Id*.
¶ 15.  The Complaint inferentially alleges that the increased
harvest may "require additional actions to double the natural
production of salmon than would have otherwise been required...."
*Id*. ¶ 177.[2]  Such actions may impact flows in the Delta, which

---

[2] Applicants also argue that because "Applicants have claims to
the same waters as do SJRGA member agencies, Applicants interests
may be affected by determinations of SJRGA member agency rights."
Doc. 43 at 4.  But, Applicants fail to explain what "rights" of
Plaintiff's are at issue in this case.  That Plaintiff's members
are holders of water rights in the San Joaquin basin is
undisputed.

has the potential to impact proposed intervenors' interests.

Central Delta and South Delta have established that their legally protectable interests are related to the claims in this case.

> b.   Honker Cut.

Honker Cut's claimed interest is in the recreational value of the SRFC fishery.  Plaintiff argues that because Salmon fishing in the San Joaquin River has been prohibited for many years, is not permitted by the 2011 management measures, and would not resume even if the 2011 management measures are sustained, Honker Cut Marine has no legitimate interest in salmon fishing in the San Joaquin River and the Delta.  Doc. 30 at 5. However, Applicants point out that fishing for salmon is permitted in the lower Sacramento River.  Doc. 43 at 7.  The claims in this case relate to SRFC abundance.

> c.   Mr. Souza.

Plaintiff complains that Applicants have not articulated any interest Mr. Souza has in the present litigation.  Plaintiff points out that although Mr. Souza fly fishes, he does not fish for Fall Chinook.  But, Mr. Souza has articulated an aesthetic interest in SRFC abundance and the fish themselves.  Souza Decl., Doc. 27-6 at ¶ 5.  This is a protected interest.  *See Summers v. Earth Island Inst*., 129 S. Ct. 1142, 1149 (2009) (acknowledging

aesthetic interests as sufficient for purposes of standing in environmental cases).  The claims in this case relate to SRFC abundance and therefore to Mr. Souza's aesthetic interest in that species.

                d.   <u>Mr. Mussi</u>

     Plaintiff also objects that Mr. Mussi has no protectable interest in this case.  Like Mr. Souza, he holds an aesthetic interest in SRFC abundance.  He also shares Central Delta and South Delta's interest in water quality, as he uses Delta water for his farming operations.  These are protectable interests related to the claims in this case.

           4.   <u>Impairment of Interests.</u>

     The next inquiry is whether disposition of this action may, as a practical matter, impair or impede Applicants' abilities to protect their interests.  This requirement demands only a showing that the applicant "would be substantially affected in a practical sense by the determination made in an action."  *S.W. Ctr.*, 268 F.3d at 822.

     To the extent that Applicants are interested purely in SRFC abundance for either commercial or aesthetic reasons, it is unclear why these interests do not completely overlap with those of the Plaintiff, SJRGA.  The Complaint alleges that the 2011 management measures allow for too much salmon harvesting and would result in <u>too little salmon abundance and continued</u>

1   overfishing.  Applicants have failed to demonstrate how this

2   interest will be impaired in any practical sense by this lawsuit.

3       Those Applicants with concerns about water quality, namely

4   Central Delta, South Delta, and Mr. Mussi, hold interests that

5   may, at least according to the allegations of the Complaint, be

6   impaired in a practical sense by a determination in favor of

7   Plaintiff.  As discussed above, the Complaint alleges that the

8   increased harvest may "require additional actions to double the

9   natural production of salmon than would have otherwise been

10  required...."  *Id*. ¶ 177.  Although the extent and nature of any

11  such "additional actions" is unclear, such actions may benefit

12  Applicants by enhancing water quality through the commitment of

13  additional Project water for fish restoration.  Conversely, the

14  absence of such additional actions to double the natural

15  production of salmon would harm Applicants.  Applicants'

16  interests in preserving and enhancing Delta water quality may be

17  impaired by this litigation.

18      5.   **Existing Parties' Ability to Represent Applicants'
             Interests.**

19  The remaining issue is whether Applicants' interests are

20  adequately protected by other defendants or defendant-

21  intervenors.  In assessing the adequacy of representation, the

22  Ninth Circuit looks at three factors:

23          (1)  whether the existing parties will undoubtedly make
                 all of the applicant's arguments;

24                              14

    (2) whether the existing parties are capable of and willing to make the applicant's arguments; and

    (3) whether the applicant offers a necessary element to the proceedings that otherwise would be neglected.

*Id*. at 823.  "[T]he requirement of inadequacy of representation is satisfied if the applicant shows that representation of its interests may be inadequate....[T]he burden of making this showing is minimal."  *Sagebrush Rebellion Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983).

  It is "well-settled precedent in this circuit" that "[w]here an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises."  *League of United Latin Am. Citizens*, 131 F.3d at 1305; *see also Arakaki v. Cay*etano, 324 F.3d 1078, 1086 (9th Cir. 2003).  This presumption is triggered here with respect to Applicants' interest in SRFC abundance.  The presumption is rebuttable upon a showing that the applicant and the existing parties "do not have sufficiently congruent interests."  *S.W. Ctr.*, 268 F.3d at 823.  Applicants have provided no such evidence.

  As to Applicants' interest in water quality in the Delta, no existing party has a sufficiently congruent interest.  However, the extent to which this interest will require separate briefing in this litigation is minimal at best.  This necessitates the strictest of limits on Applicants' participation in the lawsuit.

**B.   Permissive Intervention.**

With respect to Applicants' interest in SRFC abundance, for which intervention of right is not appropriate, Applicants alternatively request permissive intervention pursuant to Rule 24(b)(2), which requires:

(1) A timely application;

(2) A claim or defense sharing common questions of law or fact with the main action;

(3) A lack of undue delay or prejudice to the parties if intervention is allowed.

*See* Fed. R. Civ. P. 24(b)(2).

It has already been determined that Applicants motion is timely, and their concern for SRFC abundance overlaps directly with the main action.  However, Applicants have not demonstrated how their interest in SRFC abundance is different from that of Plaintiff, who has brought this lawsuit to stop ocean harvest of SRFC.  Permitting Applicants to intervene on an issue on which they can offer no new perspectives will prejudice the existing parties under the circumstances, where briefing has been expedited.  Applicants' are not entitled to permissively intervene on this issue.

### IV. CONCLUSION

Applicants' motion to intervene as a matter of right is DENIED as to those Applicants whose sole interest is in SRFC

16

abundance, as is their alternative request for permissive
intervention on this issue. The motion is GRANTED as to those
Applicants seeking to protect their interest in Delta water
quality.

Applicants' intervention is conditioned upon strictly
limiting their participation solely to issues about which they
can provide unique information and/or arguments. Applicants must
clearly delineate the issues related to their water quality
interest on which they intend to submit briefing. The parties
shall meet and confer in an effort to agree upon proposed
language describing limits for these issues, as well as related
page limits for any such briefing by intervenors, oppositions,
and replies. Proposed language shall be submitted on or before
July 8, 2011 at 12:00 noon. If the parties cannot agree on such
limiting language, any disagreements shall be described in a
joint statement to be filed with the court by the same deadline.

Applicant shall also submit a proposed form of order
consistent with this memorandum decision by July 8, 2011 at noon.
The issue and page limitation language will be incorporated in
the final order.

SO ORDERED
Dated: July 5, 2011

                              /s/ Oliver W. Wanger
                         United States District Judge

17