UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN JOAQUIN RIVER GROUP AUTHORITY,<br><br>         Plaintiff,<br><br>    v.<br><br>NATIONAL MARINE FISHERIES SERVICE,<br><br>         Defendants. | 1:11-cv-00725 OWW GSA<br><br>MEMORANDUM DECISION RE CENTRAL DELTA WATER AGENCY, ET AL.'S MOTION TO INTERVENE (Doc. 27) |

## I. INTRODUCTION/BACKGROUND

This suit arises from the United States Pacific Fisheries Management Council's ("PFMC") April 13, 2011 adoption of commercial troll and recreational fishing management measures for the waters south of Cape Falcon, permitting commercial and recreational fishing for Sacramento River fall-run Chinook Salmon ("SRFC") for the 2011 fishing season ("2011 management measures"), and the National Marine Fisheries Service's ("NMFS") May 4, 2011 approval of the PFMCs recommended 2011 fishing regulations. Doc. 1.

Central Delta Water Agency, South Delta Water Agency, Honker Cut Marine, Inc., Rudy Mussi, and Roubert Souza (collectively "Applicants") move for leave to intervene in this case as of right pursuant to Federal Rule of Civil Procedure 24(a), or in the alternative to permissively intervene under Rule 24(b). Doc.

1

19, filed June 10, 2010.  Federal Defendants take no position on the motion, provided the intervention will not affect the page limits available to Federal Defendants for any briefing in this matter.  Doc. 29.  Plaintiff opposes.  Doc. 30.  Applicants replied.  Doc. 43.

## II. BACKGROUND

### A. Claims in this Case.

Plaintiff, a coalition of irrigation districts holding water rights in the San Joaquin River or one of its tributaries, assert that Federal Defendants' adoption of the 2011 management measures violates the Administrative Procedure Act ("APA"), Magnuson-Stevens Fishery Conservation and Management Act ("Magnuson Act"), and National Environmental Policy Act ("NEPA"), by among other things approving "high levels" of Sacramento River Fall Run Chinook salmon harvest, even though "overfishing" concerns allegedly continue relative to the abundance of the species.  *Id*.

### B. The Applicants.

#### 1. Central Delta Water Agency.

The Central Delta Water Agency ("Central Delta") is a political subdivision of the State of California, created by the California Legislature in 1973.  Mussi Decl., Doc. 27-5, ¶ 18. Central Delta's territory includes approximately 125,000 acres of land and associated waterways located entirely within the boundaries of the Delta, as defined by Section 12220 of the

California Water Code, in the County of San Joaquin.  Although Central Delta's lands are devoted primarily to agriculture, its lands have other uses, including for commercial, navigation, transportation, residential, recreational, and habitat purposes. *Id*. ¶ 21.

A Central Delta Director and Co-Plaintiff, Rudy Mussi, explains that that Central Delta has a long-standing interest in Delta water quality because "[g]ood quality water is necessary for all of the uses of the waters within the Delta including farming, recreation, and wildlife use."  Mussi Decl., 27-5, ¶ 28.

### 2.   South Delta Water Agency.

Like Central Delta, South Delta is a political subdivision of the State of California, created by the Legislature in 1973. Robinson Decl., Doc. 27-3, ¶ 19.  South Delta includes approximately 148,000 acres of land and associated waterways located entirely within the boundaries of the Delta, in the County of San Joaquin.  *Id*.  South Delta's lands are also principally devoted to agriculture, but other uses include commercial, navigation, transportation, residential, recreational, and habitat purposes.  South Delta is also empowered to undertake "any lawful act necessary in order that a sufficient in-channel water supply of suitable quality may be available for any present or future beneficial use or uses of the lands within the agency."  Cal. Water Code App. §§ 116-4.1, 116-

4.2(b).

### 3. Honker Cut Marine, Inc.

Honker Cut Marine, Inc. ("Honker Cut"), is a California Corporation, owned and operated since 1986 as a marine business on King Island in San Joaquin County, on Honker Cut (a Delta waterway). Karnofel Decl., Doc. 27-4, ¶¶ 3-4. Honker Cut owns the real property on which it operates, which is situated on Honker Cut. *Id.* ¶ 3. The business sells, services, stores, maintains, and launches boats used in the Delta for, among other things, recreational fishing. *Id.* ¶¶ 4, 7.

### 4. Robert Souza, Sr.

Robert Souza, Sr. is an avid angler residing in Stockton, California. Souza Decl., Doc. 27-6, ¶¶ 1, 4-5. He regularly visits the Delta to fish for striped bass. *Id.* ¶ 6. Mr. Souza is keenly interested in the conservation of striped bass in the Delta, for educational, moral, spiritual, aesthetic, and recreational reasons, and asserts the belief that "it is unethical to kill salmon, steelhead, and striped bass in the Delta." *Id.* ¶¶ 6.

Mr. Souza characterizes his interest in this litigation as follows:

> The plaintiff's lawsuit claims that its "member agencies are injured by the failure" to comply with Magnuson-Stevens "because their water rights, water supply and water supply facilities and all of its electrical generation, recreation, and flood control facilities depend on or are located on the San Joaquin

4

```
                River and its tributaries, which is occupied by"
                Sacramento River fall-run Chinook salmon, and "[a]s
                holders of the major non-federal and non-State water
                rights in the San Joaquin River basin, SJRGA member
                agencies are responsible for abundance of" Sacramento
                River fall-run Chinook salmon. Complaint for
                Declaratory Relief and Injunctive Relief, para. 16-17.
                SJRGA's member agencies claim water rights upstream of
                the Delta, and their use and exercise of their alleged
                rights impacts Delta water quality. If SJRGA's member
                agencies in fact claim that they have a responsibility
                for Sacramento River fall-run Chinook salmon and that
                their water use operations are influenced by the
                abundance of such salmon, than [sic] Delta water
                quality is also influenced by the abundance of such
                salmon, and I personally am interested in SRFC
                abundance.
Id. ¶ 17.
```

    5.   <u>Rudy Mussi.</u>

Rudy Mussi is a director of Central Delta Water Agency and a farmer within Central Delta. Mussi Decl. ¶1. He has lived his entire life in the Delta and depends on the San Joaquin River for water used on his farm. *Id*. ¶6. He and his family also use the Delta for recreational purposes, including fishing. *Id*. at ¶7. Mr. Mussi has a long-standing and deeply-held personal interest in the conservation of the Delta and its species. *Id*. at ¶¶ 8-10.

As a director of Central Delta for the past 19 years, he has spent "countless hours of his own time working on a multitude of issues relating to the health of the Delta ecosystem," and professes to "experience great happiness with the understanding I am working toward a healthy Delta that will support all fish and wildlife species, including salmon, steelhead, striped bass, black bass, and delta smelt, as well as birds and other

5

wildlife." *Id*. ¶¶ 11-12. Mr. Mussi states that "[t]he precipitous declines in all fish populations in past decades indicate the overall poor health of the Delta due to the effects that the state and federal pumps have on the ecosystem." *Id*. at ¶ 16.

### III. INTERVENTION AS OF RIGHT.

Applicants move to intervene as of right or, in the alternative, to permissively intervene.

**A.    Intervention as of Right.**

   **1.    Legal Standard.**

Intervention is governed by Federal Rule of Civil Procedure 24. To intervene as a matter of right under Rule 24(a)(2), an applicant must claim an interest, the protection of which may, as a practical matter, be impaired or impeded if the lawsuit proceeds without the applicant. *Forest Conservation Council v. U.S. Forest Serv*., 66 F.3d 1489, 1493 (9th Cir. 1993). The Ninth Circuit applies Rule 24(a) liberally, in favor of intervention, and requires a district court to "take all well-pleaded, non-conclusory allegations in the motion as true absent sham, frivolity or other objections." *S.W. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001). A four-part test is used to evaluate a motion for intervention of right:

>    (1) the motion must be timely;
>
>    (2)  the applicant must claim a "significantly protectable" interest relating to the property or

6

```
                    transaction which is the subject of the action;
                    (3)  the applicant must be so situated that the
                    disposition of the action may as a practical matter
                    impair or impede its ability to protect that interest;
                    and
                    (4)  the applicant's interest must be inadequately
                    represented by the parties to the action.
```

*Forest Conservation Council*, 66 F.3d at 1493.

    2.   <u>Timeliness.</u>

In assessing timeliness, courts in the Ninth Circuit must consider: (1) the current stage of the proceedings; (2) whether the existing parties would be prejudiced; and (3) the reason for any delay in moving to intervene.  *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997). Applicants moved to intervene on June 10, 2010, Doc. 27, after providing notice of their intent to do so no later than June 6, 2010, *see* Doc. 24, which is approximately 30 days after the filing of the Complaint.  Existing parties are not prejudiced when "the motion was filed before the district court made any substantive rulings."  *N.W. Forest Resource Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996).  Here, no substantive rulings have been made in this case, no scheduling conference has been held, and no discovery has commenced.  The only judicial action taken in the case was the setting of a briefing and hearing schedule for the parties' cross dispositive motions.

Plaintiff nonetheless contends that the intervention is untimely because of the expedited briefing schedule on cross-

7

motions for summary judgment, which is not atypical in Magnuson Act cases. Plaintiff cites *Southern Offshore Fishing Association v. Daley*, 995 F. Supp. 1411, 1424-25 (M.D. Fla. 1998)[1], which denied intervention by a coalition of environmental organizations. The complaint in that case was filed May 2, 1997; the schedule required completion of briefing on cross-motions for summary judgment by early September 1997; and the administrative record was filed June 16, 1997. The intervention petition, filed July 16, 1997, more than two months after the complaint was filed and less than two months before briefing was to be completed, was untimely in light of the case schedule. *Id*. Plaintiff fails to mention, however, that the district court nonetheless permitted the proposed intervenors to file *amici curiae* briefs on any issue presented by the parties. *Id*.

The situation here is distinguishable. The petition for intervention was filed slightly more than one month after the filing of the initial complaint, and more than one month before briefing on cross motions was set to <u>commence</u> on July 22, 2011. That briefing will span a period of almost two months, with the final reply brief due September 16, 2011. The motion to intervene is timely.

3. <u>Significant Protectable Interests.</u>

To demonstrate a "significantly protectable interest," "a

---

[1] Plaintiff's brief cites this as a "9th Cir. 1998" when it is actually a M.D. Fla. 1998 case.

8

prospective intervenor must establish that (1) the interest asserted is protectable under some law, and (2) there is a relationship between the legally protected interest and the claims at issue." *Id*.  Here, among other remedies, Plaintiff seeks to enjoin SRFC commercial harvest, because, "[i]f significant ocean harvest continues, it will blunt SRFC preservation and restoration efforts, including those undertaken by [Plaintiff]."  Doc. 1 ¶¶ 188-91.

        a.   <u>Central Delta and South Delta.</u>

Plaintiff objects that Applicants Central Delta and South Delta lack significant protectable interests because their interests are "in the Delta," not the ocean.  Doc. 30 at 3-4. Applicants' assertion of a protectable interest is convoluted. Rudi Mussi explains Central Delta's claim of interest in this case:

> The plaintiff's lawsuit claims that its "member agencies are injured by the failure" to comply with Magnuson-Stevens "because their water rights, water supply and water supply facilities and all of its electrical generation, recreation, and flood control facilities depend on or are located on the San Joaquin River and its tributaries, which is occupied by" Sacramento River fall-run Chinook salmon and that "[a]s holders of the major non-federal and non-State water rights in the San Joaquin River basin, SJRGA member agencies are responsible for abundance of" Sacramento River fall-run Chinook salmon. Complaint for Declaratory Relief and Injunctive Relief, para. 16-17. SJRGA's member agencies claim water rights upstream of the Delta, and their use and exercise of their alleged rights impact Delta inflow and water quality. To the extent SJRGA's member agencies in fact claim that they have a responsibility for Sacramento River fall-run

9

>   Chinook salmon and that their water use operations are
>   influenced by the abundance of such salmon, the Delta
>   inflow and water quality is also influenced by the
>   abundance of such salmon.

*Id*. at ¶ 29.  Central Delta appears to suggest that any changes to the management of SRFC in the ocean environment that could result from this lawsuit will not only affect the abundance of salmon but may also "influence" freshwater management measures to benefit salmon, which in turn will affect water quality in the Delta.

Plaintiff argues that these asserted interests are not related to this litigation:

>   The water quality and water supply interests raised by
>   the South Delta [] and Central Delta [] do not depend
>   on whether the 2011 management measures are sustained.
>   (Doc. 27-1.) While the Applicants state that "the fish
>   themselves are dependent on the same water supply and
>   water of sufficient quality to sustain them in the
>   Delta," they do not explain how the water supply or
>   water quality for lands within their respective
>   jurisdictions would be harmed if the 2011 management
>   measures were not sustained. Regardless of whether the
>   fish depend on the same water supply and water quality,
>   <u>SDWA and CDWA would only have an interest in the
>   disposition of the 2011 management measures if their
>   water supply and water quality depended on the
>   abundance of Fall Chinook. Since this is not stated in
>   the Motion, they do not state an interest relating to
>   the present litigation</u>.

Doc. 30 at 4 (emphasis added).

Applicants respond by pointing out that <u>Plaintiff</u> has alleged a connection between the 2011 management measures and freshwater operations.  The Complaint alleges that "Section 3406(b)(1) of the Central Valley Project Improvement Act

10

('CVPIA') (Public Law 102-575) directs the Secretary of the Interior to develop and implement a program that makes all reasonable efforts to at least double natural production of anadromous fish in California's Central Valley streams on a long-term, sustainable basis." Doc. 1 ¶ 173. SRFC are such a species. In addition, water quality standards imposed by the California State Water Resources Control Board ("SWRCB") include a "'narrative salmon doubling objective,' which requires that water quality conditions shall be maintained, together with other measures in the watershed, sufficient to maintain a doubling of natural production of Chinook salmon from the average production of 1967-1991, consistent with the provisions of State and federal law." *Id*. ¶ 174. The SWRCB has also imposed Sacramento and San Joaquin River flow objectives to "provide attraction and transport flows and suitable habitat for various life stages of aquatic organisms, including Delta smelt and Chinook salmon. *Id*. ¶ 15. The Complaint inferentially alleges that the increased harvest may "require additional actions to double the natural production of salmon than would have otherwise been required...." *Id*. ¶ 177.[2] Such actions may impact flows in the Delta, which

---

[2] Applicants also argue that because "Applicants have claims to the same waters as do SJRGA member agencies, Applicants interests may be affected by determinations of SJRGA member agency rights." Doc. 43 at 4. But, Applicants fail to explain what "rights" of Plaintiff's are at issue in this case. That Plaintiff's members are holders of water rights in the San Joaquin basin is undisputed.

11

has the potential to impact proposed intervenors' interests.

Central Delta and South Delta have established that their legally protectable interests are related to the claims in this case.

### b. Honker Cut.

Honker Cut's claimed interest is in the recreational value of the SRFC fishery. Plaintiff argues that because Salmon fishing in the San Joaquin River has been prohibited for many years, is not permitted by the 2011 management measures, and would not resume even if the 2011 management measures are sustained, Honker Cut Marine has no legitimate interest in salmon fishing in the San Joaquin River and the Delta. Doc. 30 at 5. However, Applicants point out that fishing for salmon is permitted in the lower Sacramento River. Doc. 43 at 7. The claims in this case relate to SRFC abundance.

### c. Mr. Souza.

Plaintiff complains that Applicants have not articulated any interest Mr. Souza has in the present litigation. Plaintiff points out that although Mr. Souza fly fishes, he does not fish for Fall Chinook. But, Mr. Souza has articulated an aesthetic interest in SRFC abundance and the fish themselves. Souza Decl., Doc. 27-6 at ¶ 5. This is a protected interest. *See Summers v. Earth Island Inst.*, 129 S. Ct. 1142, 1149 (2009) (acknowledging

12

aesthetic interests as sufficient for purposes of standing in environmental cases).  The claims in this case relate to SRFC abundance and therefore to Mr. Souza's aesthetic interest in that species.

        d.   <u>Mr. Mussi</u>

Plaintiff also objects that Mr. Mussi has no protectable interest in this case.  Like Mr. Souza, he holds an aesthetic interest in SRFC abundance.  He also shares Central Delta and South Delta's interest in water quality, as he uses Delta water for his farming operations.  These are protectable interests related to the claims in this case.

    4.   <u>Impairment of Interests.</u>

The next inquiry is whether disposition of this action may, as a practical matter, impair or impede Applicants' abilities to protect their interests.  This requirement demands only a showing that the applicant "would be substantially affected in a practical sense by the determination made in an action." *S.W. Ctr.*, 268 F.3d at 822.

To the extent that Applicants are interested purely in SRFC abundance for either commercial or aesthetic reasons, it is unclear why these interests do not completely overlap with those of the Plaintiff, SJRGA.  The Complaint alleges that the 2011 management measures allow for too much salmon harvesting and would result in <u>too little salmon abundance and continued</u>

13

**overfishing. Applicants have failed to demonstrate how this interest will be impaired in any practical sense by this lawsuit.**

**Those Applicants with concerns about water quality, namely Central Delta, South Delta, and Mr. Mussi, hold interests that may, at least according to the allegations of the Complaint, be impaired in a practical sense by a determination in favor of Plaintiff. As discussed above, the Complaint alleges that the increased harvest may "require additional actions to double the natural production of salmon than would have otherwise been required...." *Id*. ¶ 177. Although the extent and nature of any such "additional actions" is unclear, such actions may benefit Applicants by enhancing water quality through the commitment of additional Project water for fish restoration. Conversely, the absence of such additional actions to double the natural production of salmon would harm Applicants. Applicants' interests in preserving and enhancing Delta water quality may be impaired by this litigation.**

**5.   Existing Parties' Ability to Represent Applicants' Interests.**

**The remaining issue is whether Applicants' interests are adequately protected by other defendants or defendant-intervenors. In assessing the adequacy of representation, the Ninth Circuit looks at three factors:**

> **(1)  whether the existing parties will undoubtedly make all of the applicant's arguments;**

14

>           (2)   whether the existing parties are capable of and
>                 willing to make the applicant's arguments; and
>
>           (3)   whether the applicant offers a necessary element
>                 to the proceedings that otherwise would be neglected.

*Id*. at 823. "[T]he requirement of inadequacy of representation is satisfied if the applicant shows that representation of its interests may be inadequate....[T]he burden of making this showing is minimal." *Sagebrush Rebellion Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983).

It is "well-settled precedent in this circuit" that "[w]here an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises." *League of United Latin Am. Citizens*, 131 F.3d at 1305; *see also Arakaki v. Cay*etano, 324 F.3d 1078, 1086 (9th Cir. 2003). This presumption is triggered here with respect to Applicants' interest in SRFC abundance. The presumption is rebuttable upon a showing that the applicant and the existing parties "do not have sufficiently congruent interests." *S.W. Ctr.*, 268 F.3d at 823. Applicants have provided no such evidence.

As to Applicants' interest in water quality in the Delta, no existing party has a sufficiently congruent interest. However, the extent to which this interest will require separate briefing in this litigation is minimal at best. This necessitates the strictest of limits on Applicants' participation in the lawsuit.

15

**B.   Permissive Intervention.**

With respect to Applicants' interest in SRFC abundance, for which intervention of right is not appropriate, Applicants alternatively request permissive intervention pursuant to Rule 24(b)(2), which requires:

> (1) A timely application;
>
> (2) A claim or defense sharing common questions of law or fact with the main action;
>
> (3) A lack of undue delay or prejudice to the parties if intervention is allowed.

See Fed. R. Civ. P. 24(b)(2).

It has already been determined that Applicants motion is timely, and their concern for SRFC abundance overlaps directly with the main action.  However, Applicants have not demonstrated how their interest in SRFC abundance is different from that of Plaintiff, who has brought this lawsuit to stop ocean harvest of SRFC.  Permitting Applicants to intervene on an issue on which they can offer no new perspectives will prejudice the existing parties under the circumstances, where briefing has been expedited.  Applicants' are not entitled to permissively intervene on this issue.

## IV. CONCLUSION

Applicants' motion to intervene as a matter of right is DENIED as to those Applicants whose sole interest is in SRFC

16

abundance, as is their alternative request for permissive intervention on this issue.  The motion is GRANTED as to those Applicants seeking to protect their interest in Delta water quality.

Applicants' intervention is conditioned upon strictly limiting their participation solely to issues about which they can provide unique information and/or arguments.  Applicants must clearly delineate the issues related to their water quality interest on which they intend to submit briefing.  The parties shall meet and confer in an effort to agree upon proposed language describing limits for these issues, as well as related page limits for any such briefing by intervenors, oppositions, and replies.  Proposed language shall be submitted on or before July 8, 2011 at 12:00 noon.  If the parties cannot agree on such limiting language, any disagreements shall be described in a joint statement to be filed with the court by the same deadline.

Applicant shall also submit a proposed form of order consistent with this memorandum decision by July 8, 2011 at noon. The issue and page limitation language will be incorporated in the final order.

SO ORDERED
Dated: July 5, 2011
                             /s/ Oliver W. Wanger
                      United States District Judge